J-A22016-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

J.B.W.,                              :        IN THE SUPERIOR COURT OF
                                     :              PENNSYLVANIA
              Appellant              :
                                     :
       v.                            :
                                     :
J.R.W.,                              :
                                     :
              Appellee               :        No. 415 MDA 2014


Appeal from the Order Dated February 4, 2014,
In the Court of Common Pleas of York County,
Civil Division, at No. 2011-FC-1259-03.


BEFORE:  PANELLA, SHOGAN and FITZGERALD*, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED OCTOBER 20, 2014**

J.B.W. ("Mother") appeals from the order entered on February 4, 2014, awarding shared legal custody of the parties' son, P.W. ("Child"), born in September of 2008, to Mother and her former husband, J.R.W. ("Father"), and awarding primary physical custody to Father and partial physical custody to Mother in accordance with a schedule.  On appeal, Mother challenges, *inter alia*, the trial court's failure to apply the custody relocation factors contained in 23 Pa.C.S. § 5337(h).  For the reasons that follow, we affirm.

The parties were divorced in October of 2011.  Joint Stipulation of Facts, 1/27/14, at 1 ¶ 3.  Father resides in Alabama with his current wife, H.W. ("Stepmother").  *Id.* at 1 ¶ 6.  Mother resides in York, Pennsylvania,

_____
*Former Justice specially assigned to the Superior Court.

with Child and her mother, A.S.-C. ("Maternal Grandmother"). N.T., 1/24/14, at 8. Mother and Maternal Grandmother testified that Mother's two younger sisters, B. and M., along with Mother's younger brother, D., also reside in the home. *Id.* at 8, 99-100.

Mother and Father shared legal custody of Child pursuant to a stipulation for custody contained in a marital settlement agreement entered on October 17, 2011, which was incorporated into, but not merged with, the parties' divorce decree. Joint Stipulation of Facts, 1/27/14, at 1-2 ¶¶ 9-10. Under the October 17, 2011 custody order, Mother had primary physical custody of Child in Pennsylvania, and Father had partial physical custody of Child in Alabama. N.T., 1/24/14, at 15-16. Father had physical custody from approximately June 1 of every year until the beginning of the third week in August. Joint Stipulation of Facts, 1/27/14, at 1-2. Father also had rights of custody for three-week periods over each of three holidays per year. *Id.* at 1 ¶ 9. At the time of the custody agreement, Father was working overseas. *Id.* at 2 ¶ 10.

On October 3, 2013, Mother filed a petition to modify custody pursuant to the Child Custody Act ("the Act")[1] and for contempt, alleging that Father was in contempt for failing to share his home address with Mother, and for failing to arrange to return Child to Mother on time. Joint Stipulation of

---

[1] Child Custody Act ("Act"), 23 Pa.C.S. §§ 5321 to 5340.

Facts, 1/27/14, at 2. Mother requested the trial court to enter an order for custody consistent with her petition.

On October 11, 2013, Father filed a notice of relocation pursuant to 23 Pa.C.S. § 5337. On October 15, 2013, Father filed an answer and counter-petition, requesting the denial of Mother's request for relief. Father sought to hold Mother in contempt for willfully failing to comply with the trial court's custody order regarding his holiday custody time. Moreover, Father requested primary physical custody of Child during the school year and the imposition of the transportation costs for Child on the party receiving custody. On October 16, 2013, Father filed an amended answer and counter-petition.

On October 22, 2013, Mother filed a counter-affidavit regarding relocation pursuant to section 5337 of the Act, objecting to the relocation and modification of the custody order in favor of Father, and requesting a hearing on both matters. On October 28, 2013, the parties appeared for a pretrial conciliation conference regarding Mother's petition for contempt and request for modification and Father's answer and counter-petition. In an interim order for custody, pending trial, dated October 28, 2013, and entered on October 29, 2013, the trial court temporarily awarded shared legal custody, primary physical custody to Mother, and partial physical custody to Father.

In a separate order entered on October 29, 2013, the trial court scheduled a pretrial custody conference for December 12, 2013, and directed both of the parties to file pretrial memoranda and to submit parenting plans, pursuant to section 5331 of the Act. Mother complied on December 4, 2013. Father complied on December 11, 2013, objecting that Mother had failed to serve her counter-affidavit on him and his counsel, although Mother had filed it with the trial court.

On December 19, 2013, the trial court entered an order scheduling the custody trial for January 24, 2014. In the scheduling order, the trial court directed the parties to submit a joint stipulation of facts at the commencement of the custody trial and to include a consideration of each of the enumerated factors outlined in 23 Pa.C.S. § 5328. Order Scheduling Custody Trial, 12/19/13, at 3. Moreover, the trial court provided the following:

> **Additional Matters:** The parties stipulate and agree that the [C]hild is not competent to testify and his preference is not at issue. Furthermore, the parties agree that relocation factors do not apply to this case and shall be excused from presenting evidence on the relocation factors outlined in 23 Pa.C.S.A. § 5337. The parties shall make the [C]hild available for face time as frequently as arrangements can be made.

*Id.* at 5.

On January 24, 2014, the parties filed the Joint Stipulation of Facts, stipulating to the best-interest-factors listed under section 5328(a) of the

- 4 -

Act as the factors for consideration. On that same date, the trial court held the custody trial.

At trial, Mother testified on her own behalf and presented the testimony of Maternal Grandmother and S.G., Mother's maternal aunt ("Maternal Great-Aunt"). N.T., 1/24/14, at 99, 108, 116, 124. Father testified on his own behalf. *Id.* at 129. Stepmother also testified. *Id.* at 212. The trial court judge did not question Child.

On February 4, 2014, the trial court entered its custody opinion and order, awarding shared legal custody, primary physical custody to Father in Alabama, and partial physical custody to Mother in Pennsylvania, in accordance with a schedule. Order, 2/4/14, at 2-3. The order provided the following custody schedule:

> Prior to the commencement of the 2014-2015 school year, the custody of Child shall be as follows:
>
>> Child shall be in the custody of Mother from the date of this Order until April 1, 2014. Mother shall provide Child with his own bed to sleep in and shall show Father Child's bed via FaceTime.
>>
>> Child shall then be in the custody of Father from April 1, 2014 until May 31, [2014].
>>
>> Child shall then be in the custody of Mother from May 31, 2014 until the Monday of the week prior to the first day of school, at which time Child shall be in the primary physical custody of Father, subject to Mother's rights as outlined further herein.
>>
>> All other provisions of this Order shall be in effect beginning the date of this Order.

**SUMMER:**

Beginning in 2015 and continuing every year thereafter, Mother shall have custody of Child for the period defined herein. Summer shall be defined as the first Monday following the last day of school until the Monday of the week prior to the commencement of the school year.

Trial Court Order, 2/4/14, at 3. The order also provided that beginning in 2014 and continuing every year thereafter, Mother shall have custody of Child for the Thanksgiving break, Christmas holiday break, and spring break. *Id.* at 4.

The order provided the following with regard to transportation:

Due to the distance between the parties and the various options each parent may choose to secure custody, the parents shall communicate at least seven (7) days prior to the pick-up regarding the itinerary of the exchange, including exact times the parent will appear on the day of the exchange. Upon notice of the time of the exchange, the custodial parent shall ensure that Child is ready to be received, with all of his necessary personal belongings at the appointed time.

The responsibilities of scheduling and paying for the transportation of Child shall be shared by the parties, with the parent who is to receive custody at the time of exchange to provide for transportation from the residence of the other parent. Additionally, due to Child's age, the party obtaining custody must appear in person, or send a fit and willing relative on the parent's behalf, to receive custody of Child. The parent receiving custody is also responsible for the cost of his or her own travel. Child may not travel unaccompanied until the parties mutually agree Child is of an appropriate age to do so.

Any individual transporting Child in an automobile shall have a valid driver's license. At all times, Child shall be secured in appropriate passenger restraints. No person transporting Child shall consume alcoholic beverages or illegal substances or

- 6 -

be under the influence of medications which impair one's ability to operate a motor vehicle prior to transporting the Child.

Trial Court Order, 2/4/14, at 4-5. Further, the trial court order addressed, *inter alia*, the sleeping arrangements, stating that Mother shall provide Child with his own bed in her residence, as should Father in his residence. ***Id.*** at 5.[2]

On March 4, 2014, Mother filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court entered its Rule 1925(a) opinion on March 11, 2014.[3] On appeal, Mother raises the following issues:

I. Whether the trial court committed an abuse of discretion in rendering a decision to grant Father primary physical custody of the parties' minor [C]hild, P.W., which decision was against the weight of the evidence presented at trial, and is contrary to the best interests of the [C]hild?

a. Whether the trial court abused its discretion and erred by determining that Father was more likely than Mother to encourage and permit the [C]hild to have frequent and continuing contact with the other parent, pursuant to 23 Pa.C.S.A. § 5328(a)(1)?

b. Whether the trial court abused its discretion and erred by determining that Father was more likely than Mother to provide stability and continuity in the [C]hild's education, family life, an [sic] community life, pursuant to 23 Pa.C.S.A. § 5328(a)(4)?

_____

[2] We note that in its custody opinion, the trial court analyzed each of the best interest factors under section 5328(a) of the Act and discussed the types of custody set forth in section 5323.

[3] The trial court gave notice to the parties' counsel, pursuant to Pa.R.C.P. 236, on March 11, 2014.

c. Whether the trial court abused its discretion and erred by determining 23 Pa.C.S.A. § 5328(a)(5) was neutral between the parties, as the evidence presented at the trial supports a finding that the [C]hild has greater ties and bonds with maternal family members rather than paternal family members?

d. Whether the trial court abused its discretion and erred by determining that Father was more likely than Mother to maintain a loving, stable, consistent and nurturing relationship with the [C]hild, adequate for his emotional needs, pursuant to 23 Pa.C.S.A. § 5328(a)(9)?

e. Whether the trial court abused its discretion and erred by determining that Father was more likely than Mother to attend to the daily physical, emotional, developmental, educational, and special needs of the [C]hild, pursuant to 23 Pa.C.S.A. § 5328(a)(10)?

II. Whether the trial court committed an error of law by failing to consider and/or apply the custody relocation factors contained in 23 Pa.C.S.A. § 5337(h)?

III. Whether the trial court abused its discretion and erred in entering a custody schedule that does not adequately preserve the relationship between [C]hild and Mother through suitable custody arrangements, considering the logistics and financial circumstances of the parties, pursuant to 23 Pa.C.S.A. § 5337(h)(3)?

Mother's Brief at 14-15.

Initially, we observe that, as the hearing in this matter was held in January of 2014, the Act is applicable. *C.R.F. v. S.E.F.*, 45 A.3d 441, 445 (Pa. Super. 2012) (holding that, if the custody evidentiary proceeding commences on or after the effective date of the Act, *i.e.*, January 24, 2011, the provisions of the Act apply). In custody cases, our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Id.* at 443 (citation omitted).

We have stated:

[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting

*Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

In *M.A.T. v. G.S.T.*, 989 A.2d 11 (Pa. Super. 2010) (*en banc*), we

stated the following regarding an abuse of discretion standard:

Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

- 9 -

*Id.* at 18-19 (quotation and citations omitted).

With any custody case decided under the Act, the paramount concern is the best interests of the child. *See* 23 Pa.C.S. §§ 5328, 5338 (23 Pa.C.S. § 5328(a) sets forth the best interest factors that the trial court must consider; *E.D. v. M.P.*, 33 A.3d 73, 80 n.2 (Pa. Super. 2011)) (23 Pa.C.S. § 5338 of the Act provides that, upon petition, a trial court may modify a custody order if it serves the best interests of the child).

Section 5323 of the Act provides for the following types of awards:

**(a) Types of award.--** After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it is in the best interest of the child:

(1) Shared physical custody.

(2) Primary physical custody.

(3) Partial physical custody.

(4) Sole physical custody.

(5) Supervised physical custody.

(6) Shared legal custody.

(7) Sole legal custody.

23 Pa.C.S. § 5323(a).

Section 5328(a) of the Act provides as follows:

**§ 5328.  Factors to consider when awarding custody**

**(a) Factors.--** In ordering any form of custody, the court shall determine the best interest of the child by considering all

- 10 -

relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328.[4]

Ordinarily, where a request for relocation of the subject child is involved, the trial court must consider the following ten relocation factors set forth within section 5337(h) of the Act:

**(h) Relocation factors.--** In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's

---

[4] Effective January 1, 2014, the statute was amended to include an additional factor at 23 Pa.C.S. § 5328(a)(2.1) (providing for consideration of child abuse and involvement with child protective services).

- 12 -

physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h); *see also E.D.*, 33 A.3d at 81 ("Section 5337(h) mandates that the trial court *shall* consider all of the factors listed therein, giving weighted consideration to those factors affecting the safety of the child.") (emphasis in original).

In **A.V. v. S.T.**, 87 A.3d 818 (Pa. Super. 2014), this Court explained the following:

> "**All** of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." **J.R.M. v. J.E.A.**, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original). Section 5337(h) requires courts to consider all relocation factors. **E.D.**, *supra* at 81. The record must be clear on appeal that the trial court considered all the factors. **Id.**
>
> Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record or in open court or in a written opinion or order." 23 Pa.C.S.A. 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." **C.B. v. J.B.**, 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, ___ Pa. ___, 70 A.3d 808 (2013). Section 5323(d) applies to cases involving custody and relocation. **A.M.S. v. M.R.C.**, 70 A.3d 830, 835 (Pa. Super. 2013).
>
> In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." **M.J.M. v. M.L.G.**, 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, ___ Pa. ___, 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). **Id.**

**A.V.**, 87 A.3d at 822-823.

First, we address Mother's challenge to the trial court's weighing of the evidence with regard to the factors under section 5328(a), in particular, (a)(1), (4), (5), (9), and (10). With regard to section 5328(a)(1), Mother contends that the trial court abused its discretion in finding that Father was more likely than Mother to permit Child to have frequent and continuing contact with the non-custodial parent. Mother's Brief at 23-24. Mother

asserts that the trial court ignored or overlooked her cooperation with Father and Father's lack of cooperation with her. *Id.* at 24. Mother argues that the trial court placed undue weight on FaceTime communication between Child and Father while Child is in Mother's custody and overlooked the uncontroverted evidence that Mother had supported and permitted regular FaceTime communication between Child and Father. *Id.* Additionally, Mother maintains that the trial court unfairly drew a negative inference that she was seeking to restrict Father's contact with Child because she filed the petition to modify custody, although Father also sought a modification of the existing custody schedule through his counter-petition. *Id.* at 26-27.

In its Rule 1925(a) opinion, the trial court explained its determination with regard to section 5328(a)(1) as follows:

> Despite the distance between the homes, Child has been able to maintain close relationships with both parents through frequent exchanges and contact via FaceTime[11] or the telephone. The [trial court] assessed Father as the party more likely to promote the relationship between [Mother] and Child, pursuant to 23 Pa.C.S.A. § 5328(a)(1), because [Mother] continuously delayed setting up the FaceTime account so that Child may speak to Father more frequently face-to-face while Child is in [Mother's] custody. At the time of trial, although the [trial court] had discussed its desire for [Mother] to establish the account prior to that date, it still had not been done. Furthermore, [Mother] testified she believed Father should only have the ability to FaceTime Child two or three times per week, although he could speak to Child once, twice a day maximum, on the telephone. With the FaceTime account requested, Child could frequently interact with the parties; it is obvious from [Mother's] testimony she would prefer to limit the more substantial contact that FaceTime allows. There was also credible testimony that Child is "coached" during conversations with Father. There was no credible evidence that Father had

engaged in such behavior. This evidence also would have been applied to 23 Pa.C.S.A. § 5337(h)(5).

> [11] FaceTime allows individuals with Apple products (iPad, iPhone, Mac computer, etc.) to make video calls so that individuals are able to see one another during the conversation.

Trial Court Opinion, 3/11/14, at 5-6 (some footnotes omitted).

The trial court's analysis pursuant to section 5328(a)(1) demonstrates that the court did not find Mother's testimony regarding her willingness to provide Father with FaceTime with Child to be credible, and found credible evidence that Mother had engaged in coaching Child. At the same time, the trial court determined that there was no evidence that Father had coached Child. There is no evidence that the trial court penalized Mother for filing her petition to modify custody. Instead, the record reflects the trial court's evaluation of the evidence in determining which parent was more likely to encourage and permit frequent and continuing contact between Child and the other parent.

After a careful review of the record, we find that there was sufficient evidence to support the trial court's credibility and weight determinations. *C.R.F.*, 45 A.3d at 443. The trial court's conclusions are not unreasonable as shown by the evidence of record. Moreover, the trial court's conclusions do not involve an error of law nor are they unreasonable in light of the sustainable findings of the trial court. *Id.* Thus, we will not disturb the trial court's determinations.

Next, Mother argues that the trial court abused its discretion in relation to its consideration of section 5328(a)(4). Mother argues that the trial court inappropriately weighed section 5328(a)(4) against her because she had enrolled Child in daycare. Mother's Brief at 28. Despite weighing Child's enrollment in daycare against Mother, Mother asserts that the trial court abused its discretion when it did not place any negative weight on Father's stated intention to enroll Child in daycare in Alabama if awarded primary physical custody. *Id.* at 29. Mother also contends that the trial court failed to consider: the fact that Mother has been Child's primary caretaker since his birth; the stability of Mother's life and housing situation compared to Father's instability; and, the stability of Child's life in York County. *Id.* at 28-29. Furthermore, citing *M.J.M. v. M.L.G.*, 63 A.3d 331, 338 (Pa. Super. 2013), Mother urges that the considerations which were part of the primary caretaker doctrine are now part of the statutory factors at section 5328(a)(3) and (4). Mother's Brief at 30. Mother contends that the trial court erred in disregarding Mother's role as Child's primary caretaker. *Id.* Mother contends that the trial court's weighing of the evidence was inequitable and unreasonable and constituted an abuse of discretion. *Id.*

The trial court explained its finding with regard to section 5328(a)(4) as follows:

> The next factor for consideration is the need for stability and continuity in the child's education, family life and community

life. Since Child was young, he has been with both parents for extended periods of time. He has extended family in the area surrounding either home. Because he has not yet begun a formal education, placement with either parent will not disrupt Child's education. Additionally, it is noted that Mother recently unilaterally enrolled Child into daycare. This factor favors Father.

Trial Court Opinion, 2/4/14, at 8.

To the extent that Mother's argument bears upon childcare, the trial court provided the following explanation in its Rule 1925(a) Opinion:

The facts on the record do indicate that [Mother] and Father are both capable of either caring for Child themselves or arranging for appropriate childcare. It is inaccurate to suggest otherwise. Father only works four days per week from 4:45 a.m. until the early afternoon and attends school for two hours per night twice per week on Monday and Wednesday. When Father is unavailable to watch Child, Father's wife, who works from home, is available to provide care. [Mother] has a varying work schedule, but relies upon her mother or her aunt to care for Child several times per week and Child also attends daycare.

Trial Court Opinion, 3/11/14, at 7-8 (internal footnotes omitted). The trial court also found relevant the fact that Mother had unilaterally made the decision to enroll Child in daycare. Trial Court Opinion, 2/4/14, at 8.

In addressing Mother's claim based on **M.J.M.**, we find it helpful to clarify that holding. In **M.J.M.**, this Court stated:

We simply cannot graft the judicially-created primary caretaker doctrine on to the inquiry that the Legislature has established [consideration of the factors outlined in 23 Pa.C.S. § 5328(a)], and so we conclude that the primary caretaker doctrine, insofar as it required positive emphasis on the primary caretaker's status, is no longer viable.

We hasten to add that this conclusion does not mean that a trial court cannot consider a parent's role as the primary

- 18 -

caretaker when engaging in the statutorily-guided inquiry. As discussed above, a trial court will necessarily consider a parent's status as a primary caretaker implicitly as it considers the section 5328(a) factors, and to the extent the trial court finds it necessary to explicitly consider one parent's role as the primary caretaker, it is free to do so under subsection (a)(16).

**M.J.M.**, 63 A.3d at 339. Thus, we cannot agree with Mother's claim that the trial court erred in failing to make a determination under Section 5328(a)(4) based on the primary caretaker doctrine.

Additionally, Mother argues that Father has acted erratically in the past, alleging incidents involving threats against her and threats of his own suicide. Mother's Brief at 32. With regard to these incidents, the trial court found the following:

> Furthermore, [the trial court] did consider the allegations regarding Father's mental health, but found that Father does not pose a threat to Child's safety and therefore did not address the issue in its Opinion. Child has been in Father's care for significant periods of time since the alleged incidents occurred and no evidence presented indicated that Child had witnessed any of these alleged incidents or that Father suffered from a mental health condition that would somehow render him unable to properly parent Child. According to testimony, [Mother] told Father's wife that she was not concerned about Child's safety, as she "trust[s] [Father] and know[s] that he never put [Child] in [h]arms [sic] way."

Trial Court Opinion, 3/11/14, at 8 (footnote omitted). As we find that there was sufficient evidence to support the trial court's credibility and weight determinations, we will not disturb them. **C.R.F.**, 45 A.3d at 443.

In a related argument, Mother next claims that the trial court abused its discretion in determining that the availability of extended family

members, pursuant to section 5328(a)(5), was neutral between the parties. Mother's Brief at 33. Mother asserts that Child has resided primarily with her since he was five months old, and that they have resided with Maternal Grandmother, as well as Child's maternal aunts, B. (age thirteen), and M. (age eleven), and Child's maternal uncle, D. (age ten). *Id.* at 33. Mother states that, because of their ages, her family members are more like siblings to Child than aunts and an uncle. *Id.* In comparison, Mother argues, there was no evidence regarding Child's relationship with extended paternal family members other than Father's testimony that Child plays with Step-Mother's seven-year-old nephew. *Id.* at 34.

The trial court found as follows in addressing this factor:

> Both parents have extended family in the area surrounding their own residences. Mother lives with [M]aternal [G]randmother and three of Mother's young siblings, ages 10, 11, and 13. A maternal aunt also lives nearby and frequents the home. Father lives within an hour of approximately twenty of his own relatives, including two brothers, the children of those brothers, and aunts and uncles. Whichever parent has primary custody of Child has extended family available. This factor is therefore neutral.

Trial Court Opinion, 2/4/14, at 8.

The evidence of record reflects that with either parent, extended family is in place. As we find that there was sufficient evidence to support the trial court's credibility and weight determinations, we will not disturb them. *C.R.F.*, 45 A.3d at 443. Thus, we cannot agree that the trial court

abused its discretion in determining that this factor was neutral between the parties.

Next, Mother contends that the trial court abused its discretion in determining that Father was more likely than Mother to maintain a loving, stable, consistent, and nurturing relationship with Child, adequate for Child's emotional needs, pursuant to section 5328(a)(9). Mother's Brief at 35. Mother asserts that the trial court's focus on the reference between Child and her as "best friends" was an abuse of the trial court's discretion. *Id.* Mother claims that there was no evidence "that a parent and child affectionately referring to one another as best friends is harmful to the child or otherwise not in the child's best interests." *Id.* Further, Mother states that, as the trial court did not interview Child, there was no indication or evidence of any negative effect on him. *Id.*

The trial court provided the following analysis as to this factor:

> Both parents unquestionably love Child and, according to the testimony presented, he loves them as well. The [trial court] is concerned, however, that Mother and Child refer to each other as "best friends." There is some instability in such a relationship, especially due to Child's age, as it causes Mother to sometimes ignore appropriate boundaries. Mother's conduct requires [the trial court] to find this factor leans in favor of Father.

Trial Court Opinion, 2/4/14, at 9-10.

In stating its concern that Mother lacks the ability to impose proper boundaries for Child, it is clear that the trial court considered instances where Mother had exhibited lapses in judgment, such as allowing Child to sit

on her lap while driving, video recording the experience, and sharing it with others. Trial Court Opinion, 2/4/14, at 10. The trial court also considered the sleeping arrangements in Mother's home, where Child sleeps in Mother's bedroom, despite each of Mother's female siblings having her own room.[5] **Id.** As such, we conclude that there was evidence before the court to suggest that Mother's friendly relationship with Child caused an erosion of the parent-child boundaries. Because we conclude that there was sufficient evidence to support the trial court's credibility and weight determinations, we will not disturb them. **C.R.F.**, 45 A.3d at 443.

Mother next challenges the trial court's determination regarding section 5328(a)(10), which parent is more likely to attend to the daily physical, emotional, developmental, educational, and special needs of the child. Mother's Brief at 36. Mother asserts that Father never expressed concerns about Child's sleeping arrangements at Mother's home during the custody trial. **Id.** 36. She states that there was no evidence presented that Child's sharing a bedroom with Mother would impair his emotional and developmental needs. **Id.** Mother also claims that although Father testified that he was concerned about Child when he saw a video of Mother driving with Child in her lap, he waited a few days before calling police, thereby suggesting a disingenuous motive. **Id.** Mother states that the driving

---

[5] While the trial court stated that Mother shared a bed with Child, Mother testified that she shared a bedroom, not her bed, with Child. N.T., 1/24/14, at 9.

incident was isolated, on her quiet street, and coupled with Father's disingenuous concern, does not support the trial court's finding that this factor is weighed in favor of Father. *Id.*

To the contrary, Mother asserts, the trial court did not consider evidence that Father is not serving the developmental needs of Child. Mother's Brief at 36-37. Mother argues that the trial court failed to consider the fact that, when in Father's care, Father pushes Child to lose weight, against the recommendation of the pediatrician. *Id.* at 37. Additionally, Mother asserts that the trial court failed to consider that she had been Child's primary caregiver since Child was five months old and provides for Child's day-to-day needs. *Id.* at 37. When in Mother's custody, she gets Child ready for school and takes him to daycare. *Id.* Conversely, Mother states, when Child resides with Father, Stepmother provides for fifty percent of Child's day-to-day needs. *Id.*

In addressing this factor, the trial court found as follows:

> This factor favors Father. Once again, the nature of the relationship between Mother and Child causes Mother to[,] at times[,] act inappropriately or contrary to Child's safety. She not only encourages potentially dangerous behavior, such as allowing Child to drive the car while he is sitting upon her lap, but she records and shares it electronically. Additionally, she does not always put Child's best interests above her own. The evidence shows that while Mother resides in a four-bedroom house, Child is forced to share a bed with Mother and his ten-year[-]old uncle shares a room with the maternal grandmother. Interestingly, however, each of his aunts – ages 11 and 13 – have their own bedrooms. Father is the parent who assumes an appropriate role in Child's life and provides for Child's needs

- 23 -

accordingly. The [trial court] will address the sleeping arrangements in the Order.

Trial Court Opinion, 2/4/14, at 10.

It is apparent that the trial court was concerned for Child's safety based on the driving incident and Mother's lack of judgment in determining the sleeping arrangements in her home with Maternal Grandmother. Mother asks this Court to overlook matters that the trial court found significant to Child's emotional and developmental needs. We cannot do so. After a careful review of the record, we find that there was sufficient evidence to support the trial court's credibility and weight determinations. *C.R.F.*, 45 A.3d at 443. The trial court's conclusions are not unreasonable based on the evidence of record. Moreover, the trial court's conclusions do not involve an error of law, and are not unreasonable in light of the sustainable findings of the trial court. *Id.* Thus, we will not disturb the trial court's determinations.

In her second issue, Mother argues that the trial court committed an error of law in failing to consider section 5337(h) relocation factors in its opinion and order entered on February 4, 2014. Mother's Brief at 37. While Mother acknowledges that the parties entered into the joint stipulation of facts and agreed that relocation would not be placed at issue at the custody trial, she now contends that the parties may not waive the relocation factors by stipulation. *Id.* at 38. Accordingly, Mother asserts, the trial court should have considered the relocation factors at the time of issuing its February 4, 2014 order. *Id.* at 40.

We first note this Court's recent ruling in **D.K. v. S.P.K.**, ___ A.3d ___, 2014 WL 4923111, 2014 Pa. Super. 218 (Pa. Super. filed October 02, 2014), in which this Court was confronted with the same factual scenario presented herein: where neither party was relocating but the children were moving a significant distance due to custody being shifted from one parent to another. The Court was presented with the question of whether such custody modification was a "relocation," and thus, whether the provisions in section 5337 regarding relocation were triggered. **Id.** at *3. The Court concluded that the shift of primary physical custody in this situation does not, *per se,* trigger section 5337 of the Child Custody Act. **Id.** at *10. "Thus, the notice requirement of section 5337(c) does not apply in such cases." **Id.** The Court, however, stated the following with regard to the relocation factors under section 5337(h):

> Trial courts should still consider the relevant factors of section 5337(h) in their section 5328(a) best interest analysis. As we have explained, several of the relevant factors of section 5337(h) are encompassed, directly or implicitly, by the custody factors listed in section 5328(a). Any relevant section 5337(h) factor that is not expressly encompassed in section 5328(a) should be considered by the trial court under the catchall provision of section 5328(a)(16).

**Id.**

Thus, given the facts of the case *sub judice*, we conclude that the shift of primary physical custody from Mother's residence to Father's, does not, *per se,* trigger 23 Pa.C.S. § 5337. Based on **D.K.**, however, the trial court is

- 25 -

compelled to consider the relevant relocation factors outlined in section 5337(h) in conducting its analysis pursuant to section 5328(a). As noted, several of the section 5337(h) factors are encompassed directly or implicitly by the custody factors listed in section 5328(a).

Here, we note that the trial court expressly considered each of the section 5337(h) factors in its Pa.R.A.P. 1925(a) opinion, dated March 11, 2014.[6] The trial court's discussions regarding the encompassed section 5337(h) factors were repetitive of the trial court's analysis of those related factors conducted pursuant to section 5328(a). Trial Court Opinion, 3/11/14, at 3-9. It is clear that the trial court took into consideration, throughout its analysis, the impact of shifting primary physical custody to Father, and the related change in primary physical residence for Child.

Furthermore, the Court in **D.K.** identified factors 5337(h)(2), (h)(3) and (h)(7) as factors that are not directly or implicitly encompassed in section 5328(a), but are relevant to a determination of custody that is in the child's best interest and thus should be considered under the catchall

---

[6] We find **A.M.S.**, 70 A.3d at 835, distinguishable from the instant situation in that the trial court omitted its application of the section 5337(h) factors from its February 4, 2014 opinion and order because of the parties' stipulation to not have the court address those factors. Despite that stipulation, it is obvious that the trial court considered relevant section 5337(h) factors when it conducted its best interest of the child analysis under section 5328(a). Additionally, the trial court had conducted its review prior to the holding in **D.K.** Thus, we reject Mother's suggestion that the trial court's consideration of the relocation factors in its Pa.R.A.P. 1925(a) opinion, dated March 11, 2014, does not comply with the mandate of the Act.

provision of section 5328(a)(16). **D.K.**, 2014 Pa. Super. 218 at *10. With regard to factor 5337(h)(2), the trial court explained that Father had been living in Alabama since Child was one year old, and Child had spent significant periods of time with Father in Alabama. The trial court determined that when with Father in Alabama, Child's needs are met. Trial Court Opinion, 3/11/14, at 4; Trial Court Opinion, 2/4/14, at 10. In addressing 5337(h)(3), the trial court attempted to craft a custody schedule, given the Child's attendance at compulsory schooling and the distance between the parties, that would preserve the relationship with both parents. Trial Court Opinion, 3/11/14, at 4. Trial Court Opinion, 2/4/14, at 10. As to factor 5337(h)(7), the trial court explained that Father could provide Child with housing more appropriate than that provided by Mother. Trial Court Opinion, 3/11/14 at 6; Trial Court Opinion, 2/4/14, at 10. Although the court in **D.K.** opined that these factors were not directly or implicitly covered by Section 5328(a), it is clear from the trial court's February 4, 2013 opinion, that in this case, the trial court also considered these factors in conducting its best-interest-of-the-child analysis pursuant to section 5328(a). As such, we cannot agree with Mother's claim that the trial court committed an error of law by failing to consider or apply the custody relocation factors in 23 Pa.C.S. § 5337(h).

In particular, Mother challenges the trial court's findings with regard to section 5337(h)(3), as identified in her third issue presented on appeal.

Mother's Brief at 40. Mother asserts that the February 4, 2014 custody order does not set forth a schedule that would adequately preserve Child's relationship with her, as she has been Child's primary caretaker for five years. *Id.* at 41. She complains that the time between her custodial breaks is long, and that she is not permitted to exercise custody, so that Child will go for months without seeing Mother and his maternal family members. *Id.* Mother also requests that she have the first option to exercise custody during a long weekend off from school. *Id.*

> In addressing this claim, the trial court stated as follows:
>
> Unfortunately, because of the long-established distance between the parties and Child's imminent enrollment in compulsory schooling, the schedule involves one parent having primary physical custody of Child and the other partial physical custody, or a "more traditional school schedule," as [Mother] referred to it. That said, [the trial court] crafted a custodial schedule that maximizes Child's time with both parents. Although travel arrangements may be logistically or financially burdensome, these arrangements have been necessary for years. The financial burden of the travel arrangements primarily fell upon Father.

Trial Court Opinion, 3/11/14, at 4 (footnotes omitted).

The trial court adequately explained its decision to follow a "more traditional school schedule" in its partial custody award to Mother, especially in light of the distance between the parties. Thus, we conclude that there was sufficient evidence to support the trial court's credibility and weight

determinations with regard to section 5337(h)(3), and do not disturb its order. **C.R.F.**, 45 A.3d at 443.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/20/2014